UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ARTHUR FRANTZ,

        Plaintiff,

                                          Case No. 04-CV-72904

vs.

                                          HON. GEORGE CARAM STEEH

CITY OF PONTIAC, et al.,

        Defendants.

_____/


ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNION'S
MOTION TO DISMISS CROSS-COMPLAINT (DOC. # 64)

        This case was before the court on May 16, 2005, for a hearing on defendant

Local #376, Firefighters Union, International Association of Firefighters Affiliated with

AFL-CIO's ("Union") Fed. R. Civ. P. 12(b)(6) motion to dismiss defendant City of

Pontiac's ("City") cross-complaint. For the reasons that follow, the Union's motion is

granted in part and denied in part.

BACKGROUND

        Plaintiff, a long term firefighter with the City of Pontiac, filed a two-count "reverse

discrimination" lawsuit in July 2004.  The first count, brought under 42 U.S.C. § 1983,

asserted that defendant's "racially discriminatory policies" denied the plaintiff equal

protection under the law, in violation of the 14th Amendment.  The second count

asserted that defendant's discriminatory policy was made in "willful and reckless

disregard for the rights of the plaintiff, and denied "his right to contract," constituting a

continuing violation of 42 U.S.C. § 1981.  Plaintiff's third cause of action, brought in

subsequent complaints, alleges defendants' liability under the Michigan Elliott-Larsen Civil Rights Act.

The court has considered, and denied without prejudice, plaintiff's motion for partial summary judgment, which requested entry of judgment against the City of Pontiac as to liability.  After the filing of that motion, defendant City of Pontiac granted plaintiff the promotion he sought, along with back pay retroactive to November 2003, an action which was grieved by the Union.  Defendant City of Pontiac then filed its motion for partial dismissal, based on its actions in granting plaintiff relief he requested in the lawsuit, and moved to file a cross-claim against the Union for recovery against the Union if the trier of fact finds that "any aspect of Plaintiff's Complaint justifies recovery and/or judgment."  The court gave the City leave to file the cross-complaint, which is the subject of the instant motion.

In its cross-complaint, the City asserts that at the time it entered into the affirmative action plan in agreement with the Union, the City believed the plan to be lawful.  It asserts that as the agreement was being negotiated, the Union willfully withheld material information from the discussions, including recommendations the Union had received from counsel concerning the plan's continued lawfulness.  The City asserts that it "is entitled to recover against the Union whatever amount is deemed appropriate by the finder of fact for the following reasons," and asserts a right to "common law indemnification," contribution, and the right to request that the jury apportion fault between the City and the Union.

The Union moves for dismissal of the City's cross-complaint, asserting that the City has not or cannot plead a claim for contribution or indemnification under state or

federal law.  The court's consideration of and determination on defendant Union's motion to dismiss the cross-complaint is set forth below.

## STANDARD

When this court considers a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "well-pleaded facts" contained in a complaint must be accepted as true.  Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).  Any ambiguities in the pleadings must be resolved in the pleader's favor.  Jackson v. Richards Medical Co., 961 F.2d 575, 577 (6th Cir. 1992).  However, the court need not accept as true legal conclusions or unwarranted factual inferences.  Morgan, 829 F.2d at 12.

Once the court has "constru[ed] the complaint in the light most favorable to the plaintiff ... [it] determine[s] whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief."  Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir.1998) (citation omitted).   A district court properly grants the motion to dismiss when there is no set of facts contained in the complaint  that would allow recovery.  Carter by Carter v. Cornwall, 983 F.2d 52, 54 (6th Cir. 1993).

## ANALYSIS

1. City's claims to contribution/indemnification under Michigan law

Defendant Union's first arguments address defendant City's entitlement to contribution and indemnification under Michigan law.  Such claims apply to any potential recovery under plaintiff's Elliott-Larsen claim.  The third argument asserted by the Union addresses the City's entitlement to contribution and/or indemnification under federal law, which would apply to any recovery by the plaintiff based upon his federal claims. The court will address each argument in turn.

3

Defendant Union first asserts that the cross-complaint fails to state an adequate claim for contribution under Michigan law.  The Union cites to Donajkowski v. Alpena Power Company, 460 Mich. 243 (1999), arguing that in Michigan a claim for contribution must be made under Mich. Comp. Laws Ann. § 600.2925a, and may not be made under common law.  The Union's argument is that the claim can be made only when common liability is pled, which was not sufficiently pled in the cross-complaint.

In response, defendant City of Pontiac first argues that the Union cannot use a 12(b)(6) motion to fight this pleading now, as the court invited the Union to file supplemental briefing at the time the City requested leave to file the cross-complaint. The court is not convinced by this argument.  The court neither communicated nor intended to preclude a Fed. R. Civ. P. 12(b)(6) motion on the part of the Union in allowing the Union to object, if desired, to the City's proposed cross-complaint. Therefore, the court does not agree with the City's argument that the Union has waived its right to now challenge the claims filed.

Turning to the substance of the parties' arguments, concerning a claim of contribution under Michigan law, the parties agree that state law permits claims for contribution among those found jointly liable for Elliott-Larsen violations.  The cross claim in this matter clearly seeks to apportion liability between the City and Union in the event both are found liable.  Paragraph #2 of the cross-complaint states that the "[c]omplaint alleges that both the City and the Union have violated his rights by promoting him consistent with the terms of an affirmative action plan within the Collective Bargaining Agreement as such violates his civil rights and rights to enter into contracts under State and Federal Law."  The allegations continue by denying any

4

impropriety in the CBA, and articulating the City of Pontiac's asserted belief, at the time

it entered into the CBA, that such was lawful.  The cross-complaint goes on to allege

that the Union withheld information concerning the "continued lawfulness" of such a

practice, and includes language asserting that the "City of Pontiac is entitled to recover

against the Union whatever amount is deemed appropriate by the finder of fact..."

Cross-complaint, ¶ 11.  Later in that paragraph, the City asserts its entitlement to

"request the jury to apportion fault between the City and the Union..."  Id.

The Donajkowski case is cited by the City in its cross-complaint as a case in

which the Michigan Supreme Court permitted the employer to seek contribution in an

Elliott-Larsen sex discrimination case where terms and conditions of a CBA were at

issue.  In that case, the Michigan Supreme Court held that "on the basis of its plain and

unambiguous terms, the Michigan contribution statute...authorizes an intentional

tortfeasor to seek contribution."  Donajkowski, 460 Mich. At 251-52.  The court again

summarized its holding in a later section addressing the dissent's viewpoint:

> To make the matter plain, the legal question posed by this case is simple:
> Where a plaintiff has alleged that the terms of a collective bargaining
> agreement negotiated by her employer *and* her union discriminate against
> her on the basis of her gender, may the union escape liability for its
> asserted complicity in that act of discrimination?  As set forth above, we
> hold that the union is accountable for its role in any alleged discrimination
> in the workplace and is subject to a contribution action as a joint
> tortfeasor.  By contrast, the dissent concludes that a union alleged to be
> complicit in workplace sex discrimination is nonetheless immune from
> contribution.

Id. At 254-55.

At oral argument, counsel for the Union agreed that should the court find the

pleadings to sufficiently allege common liability, and thus a state law cause of action for

5

contribution, such a claim would be permitted under applicable precedent.  The court

finds under the notice pleading standard applicable here, Fed. R. Civ. P. 8, the

allegations in the City's cross-complaint are sufficient to plead a cause of action for

contribution under Michigan law.  The Union's motion shall be denied as to that claim.

The Union's second argument is that the cross-complaint fails to state an

adequate claim of common law indemnification under Michigan law.  The Union asserts

that the City cannot be said to be "free from active or causal negligence," as necessary

for a claim of indemnification, because the complaint in this matter asserts only active

negligence on the part of the City.  The Union also notes that the complaint's allegations

against the City are recognized in the cross-complaint.

The court agrees that a defendant is not entitled to indemnity under common law

where a complaint alleges "active" negligence.  See Peeples v. City of Detroit, 99

Mich.App. 285, 293 (1980) (citing Hill v. Sullivan Equipment Co., 86 Mich.App. 693,

696-97 (1978).  "If [the primary plaintiff's] complaint alleges 'active' negligence, as

opposed to derivative liability, the defendant is not entitled to common-law indemnity."

Id.  See also Johnson v. Bundy, 129 Mich.App. 393, 399 (1983).  In the instant case, the

cross-complaint asserts, in part, that "the City's liability is premised upon its passive

acquiescence to the Union's knowing and active desire to assert the affirmative action

plan...."  However, the primary plaintiff's complaint alleges that the defendants *together*

established an "illegal Quota system [which] constitutes a pattern and practice of

discrimination against white males."  Third Amended Complaint, ¶ 26.

The cross-complaint's claim for indemnity under Michigan law cannot survive.

Even if the complaint were read to suggest a passive role on the part of the City in the

adoption of the plan in dispute, it is the CBA, which was negotiated and executed by both the Union and the City, which gives rise to the claims in this lawsuit.  This lawsuit could simply not result in the City being "held vicariously liable to another (plaintiff) through no fault of his own."  Peeples, 99 Mich.App. At 297.  The claim will be dismissed.

2. City's claim to contribution/indemnification under federal law

The Union's third argument addresses the City's claims for contribution and indemnity under federal law.  The Union relies on the case of Northwest Airlines, Inc. v. Transport Workers Union of America, 451 U.S. 77 (1981) and its progeny, and asserts that because the text of neither § 1981 nor § 1983 "expressly or implicitly allow[s] recovery based on contribution or indemnity," the pleading fails to state a claim for contribution or indemnity as to those statutes.

In the Northwest case, which involved claims under the Equal Pay Act and Title VII, the Supreme Court described in detail the two possible theories which might allow the petitioner's claim for contribution to succeed.  First, the Court engaged in an exercise of statutory construction, determining not only that the Equal Pay Act and Title VII contained no provisions granting petitioner its claimed right; also that the legislative history and statutory schemes likewise contained no indication that Congress intended to give petitioner a right to contribution in such a scenario.  Id. at 91-92.  The Court next addressed the "federal common law" argument, acknowledging that federal courts have supplemented "[b]roadly worded constitutional and statutory provisions" through "case-by-case judicial decision in the common-law tradition," and that in the admiralty arena, in particular, "judge-made rules of maritime law" have been developed.  Nevertheless,

the court observes that it remains federal courts' "duty to respect the will of Congress." Id. at 95-96.[1]  The Supreme Court thus rejected the notion that federal common law could give the petitioner its claimed right to contribution, finding that it would be "improper for us to add a right to contribution to the statutory rights that Congress created in the Equal Pay Act and Title VII."  Id. at 99.

This court finds that the Northwest reasoning applies with equal force to plaintiff's claims in this case.  The Union's proffered authorities included only one involving claims under §§ 1981 and 1983.  That case is from the District of Kansas, Gray v. City of Kansas City, Kansas, 603 F.Supp. 872 (D.Kansas 1985), in which the district court held the defendant city and its police chief had no right of contribution from the third-party union defendant, the Fraternal Order of Police.  The court found there that

> [n]either statute makes express provision for a contribution remedy.  A major factor in determining whether a statute creates an implied cause of action is whether that statute was enacted for the special benefit of a class which includes the party seeking to bring such an action.

Id. at 874 (citing Northwest, 451 U.S. at 91-92).  The district court went on to say

> [i]n this case, in cannot possibly be said that these defendants are members of the class for whose special benefit either section 1981 or 1983 was enacted.  To the contrary, both statutes are expressly directed against anyone (such as these defendants) accused of the acts alleged in plaintiff's complaint.

Id.  The reasoning in that case, consistent with Northwest, is persuasive in resolving this issue.  See also Hart v. City of Williamsburg, Kentucky, 2005 WL 1676894 (E.D.Ky.)

---

[1] That same year, in Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630 (1981), the Supreme Court stated that "absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights or States or our relations with foreign nations, and admiralty cases."

(noting that right to contribution and/or indemnity under § 1983 has not been addressed by the Sixth Circuit but that many courts have found no right of contribution under § 1983).

Nothing in the City's response brief persuades the court that its analysis or conclusion should vary from that in Northwest.  Although the City cites to a Minnesota District Court case, Braun v. Worldwide, Inc., 75 FEP 1706 (1998), in which the court apparently allowed an employer to seek contribution from a union[2], the court finds little guidance in this assertion and is not convinced that could be the correct result under Northwest.  Despite the City's argument that the same "policy" reasons behind the law that a Union's contractual indemnification in a CBA is not enforceable support a finding that the Union cannot promote a quota practice it secretly knows is unlawful, this is not what Northwest stands for.  The Northwest decision clearly sets out the guiding analytical question behind its holding: whether or not *Congress intended* to create a "right to contribution in favor of employers under the Equal Pay Act and Title VII." Northwest, 451 U.S. at 94.

Reviewing the factors often examined in making decisions such as that required here, the parties do not dispute that there is no entitlement to contribution on the part of the employer included in the *language* of either §1981 or § 1983.  Second, the City does not argue that the legislative history or underlying purpose of the statutes imply that right.  See Northwest, 451 U.S. at 91.  The City's repeated argument, in which it speculates about the unfairness of the Union allegedly making recommendations

_____

[2] The court was not able to locate the case and notes it was not attached to the City's brief.

concerning an affirmative action plan in reliance on its immunity from suit, does not change the analysis.  In fact, that very argument was made and rejected by the U.S. Supreme Court in the Northwest opinion.  Third, as discussed and decided in the Northwest decision, which is not distinguishable here, no federal common law right to contribution/indemnification exists under these circumstances.

The City simply has not demonstrated that there is an express, implied or common law right to contribution it may seek from the Union as it relates to the claims asserted under §§1981 or 1983.  Accordingly, defendant Union's motion to dismiss the cross-complaint as to the claims for contribution and indemnification under federal law will be granted.

### CONCLUSION

For the reasons given above, defendant Union's motion to dismiss the cross-complaint is hereby GRANTED IN PART AND DENIED IN PART.  Defendant City's claim for indemnification under Michigan law is hereby dismissed, as are the City's claims for contribution and indemnification as to the plaintiff's federal claims.  The City's claim for contribution under Michigan law, however, will be maintained.

IT IS SO ORDERED.

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  May 18, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on May 18, 2006, by electronic and/or ordinary mail.

S/Josephine Chaffee
Secretary/Deputy Clerk

10