UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR FRANTZ,

        Plaintiff,

                                       Case No. 04-CV-72904

vs.

                                       HON. GEORGE CARAM STEEH

CITY OF PONTIAC, et al.,

        Defendants.

_____/

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART WITHOUT
PREJUDICE DEFENDANT CITY'S MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANT UNION (DOC. #79) AND GRANTING IN PART AND DENYING IN PART
DEFENDANT CITY'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF
(DOC. # 83)

INTRODUCTION

Before the court in this race discrimination lawsuit filed by a City of Pontiac

("Pontiac") firefighter are two motions for summary judgment filed by defendant City of

Pontiac ("City"). The first filed motion seeks entry of judgment against the Union as to

Pontiac's cross-claim for contribution under the Michigan Elliott-Larsen Civil Rights Act.

The later filed of the two motions seeks the entry of judgment as to each of plaintiff's

remaining claims. As stated below, each of the City's motions is granted in part and

denied in part.

BACKGROUND

Plaintiff's two-count "reverse" discrimination lawsuit was filed in July 2004. The

first count, brought under 42 U.S.C. § 1983, asserted that defendant Pontiac's "racially

discriminatory policies," part and parcel of its quota system established via an

applicable Collective Bargaining Agreement made with the firefighters' union, denied the plaintiff equal protection under the law, in violation of the 14th Amendment.  The second count asserted that defendant's discriminatory policy was made in "willful and reckless disregard for the rights of the plaintiff, and denied "his right to contract," constituting a continuing violation of 42 U.S.C. § 1981.  Plaintiff's union was joined as a defendant to the lawsuit under Fed. R. Civ. P. 19(a) upon motion made by Pontiac.

During this litigation, in 2005, Pontiac granted plaintiff his sought-after promotion to lieutenant, along with back pay retroactive to November 2003 and a seniority date effective as of the promotion.  Earlier in the litigation, Pontiac was permitted to file a cross-claim against the Union for recovery against the Union under theories of indemnification and contribution if the trier of fact finds that "any aspect of Plaintiff's Complaint justifies recovery and/or judgment."  Resulting from a motion to dismiss filed by the Union, only plaintiff's claim for contribution as to the Michigan Elliott-Larsen Civil Rights Act (ELCRA) survives in that cross-claim.

Now pending before the court are two further requests made by Pontiac: one asserts that it is entitled to summary judgment on the claims remaining in plaintiff's complaint, and the other asserts that judgment should enter on its remaining claims against the Union.  The court's discussion of and determination on these requests is set forth below.

## STANDARD

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences therefrom must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968);

3

see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere

allegations or denials in the non-movant's pleadings will not meet this burden, nor will a

mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248,

252.  Rather, there must be evidence on which a jury could reasonably find for the non-

movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

ANALYSIS

1. City's Motion for Summary Judgment against the Union

        This motion, which the court previously ruled on, is before the court again on

request of the Union.  The court had granted the motion, largely because the Union had

failed to respond.  The court then vacated that order, and allowed complete briefing and

oral argument on the motion, which has now occurred.

        In the motion the City requests summary judgment as to its claims of contribution

and indemnification against the Union[1], asserting that Union officers knew at the time

the CBA was entered into that the affirmative action practice challenged in this lawsuit

was unlawful.  The City attributes this "knowledge" to certain memoranda sent to the

Union's president by counsel for the Union, questioning the propriety of the affirmative

action practices, as of the time of implementation of the 2002-04 CBA.  The City thus

asserts that the Union should bear full responsibility for any further liability in the case,

or alternatively, at least half of the liability.

_____

        [1] The Union correctly points out that as this court has found that there is no claim to
contribution or indemnification as to the plaintiff's federal claims, the City's claim for
contribution applies only to recovery under plaintiff's state law ELCRA claim.

4

In its late-filed response, which the Union was given leave to file, it points to a 2004 memo from Union officer Richard Luxon to Larry Marshall, Labor Relations Director for the City of Pontiac, in which Luxon requested formation of a City/Union committee "to investigate the current affirmative action program that may be in violation of applicable law, " and to which Luxon asserts (via affidavit) he received no response. The Union also states it had no duty to provide the City, which had its own counsel, with legal advice, and that the claim is premature, as neither settlement nor judgment have occurred in the case.[2]

The court will not grant the relief requested by the City. Statute controls the cause of action for contribution under Michigan law.[3] A claim for contribution is made by alleging that common liability exists between multiple defendants and that the claimant is "exposed to greater liability for damages than would be its pro rata share." Moisenko

---

[2]     The Union further argues that this claim actually states an unfair labor practice, for failure to provide relevant and necessary information to a public employer, which falls under § 10(3)(c) of the Public Employment Relations Act (PERA), or Mich. Comp. Laws Ann. § 423.210(3)(c). Thus, it states, the Michigan Employment Relations Commission has exclusive original jurisdiction over such a claim, citing Kent County Deputy Sheriff's Association v. Kent County Sheriff, 238 Mich App. 310, 325 (2000). The court is not convinced by this construction of PERA. The statutory language itself prohibits a practice of "refus[ing] to bargain collectively with a public employer, provided it is the representative of the public employer's employees subject to section 11." Where, as here, the practice complained of results from the terms of a CBA, the court is not persuaded the statute has application.

[3] This statute provides, in pertinent part:
(1) [W[hen 2 or more persons become jointly or severally liable in tort for the same injury to a person..., there is a right of contribution among them even though a judgment has not been recovered against all or any of them.
(2) The right of contribution exists only in favor of a tort-feasor who has paid more than his pro-rata share of the common liability and his total recovery is limited to the amount paid by him in excess of his pro rata share.
Mich. Comp. Laws Ann. § 600.2925a(1)-(3).

v. Volkswagen AG, 10 F.Supp.2d 853, 855 (W.D. Mich. 1998).  This appears to be what the City is arguing by referring to counsel's memos to the Union, i.e. that the City was led into an illegal practice solely through the Union's deception, and thus that the city is "exposed to greater liability for damages than would be its pro rata share."  Id. The court is not convinced.  Not only do the proffers provided by the City fail to persuade the court that the City is somehow less culpable than the Union for the actions complained of, the court is convinced by the Union's argument that judgment on such a claim is premature.

As discussed in the case of CSX Transportation, Inc. v. Union Tank Car Company, 173 F.Supp.2d 696 (E.D. Mich. 2001), following Michigan's enactment of tort reform in 1995, joint and several liability was abolished in most tort cases brought under Michigan law.  Rather, the factfinder allocates percentages of fault to the various, severally liable, defendants.  Mich. Comp. Laws Ann. § 600.6304.  The statutory cause of action for contribution, however, survived this change.  As the CSX case further points out, explained in Kokx v. Bylenga, 241 Mich.App. 655 (2000) is the interplay between tort reform and the cause of action for contribution: an action for contribution does not exist where a party could not claim it paid more than its pro-rata share of liability, which it could not do in a situation where the liability was allocated by percentage of fault.  Id. at 662-63.

In the instant matter, the City has already tendered certain funds to plaintiff.  At trial, there is the possibility that compensatory damages could be awarded, apportioned between the defendants, as determined by the jury.  Thus, the court is convinced that the City's claim for contribution is premature at this juncture, may not be viable at all, but

6

that in any event its motion for summary judgment as to this claim should be denied without prejudice.

2. City's Motion for Summary Judgment against Plaintiff

This motion asserts the City's entitlement to summary judgment on the basis that plaintiff's complaint alleges he was denied a promotion on the basis of race and that the City has now given plaintiff both a retroactive promotion effective November 1, 2003, as well as economic damages reflecting the pay differential and retroactive date.  The city points out that the check has been endorsed by plaintiff and his counsel, and plaintiff has not challenged the economic damage calculations.  The City states that in the companion Department of Justice matter, the plaintiff filed an objection to the settlement, but only complained about a seniority issue with regard to firefighter Trinidad Martinez, an uninvolved third party.  Concerning the requested seniority, the City cites to International Brotherhood of Teamsters v. United States, 431 U.S. 324, 373 (1977) for the proposition that "adjusting the remedial interest of discriminitees and the legitimate expectations of other employees innocent of any wrongdoing...is a delicate task."  The City asserts that the City's award of retroactive seniority and damages in this case are sufficient.

Concerning plaintiff's ongoing claim for non-economic damages, the City asserts there is insufficient evidence under both federal and state law to support a claim for such damages.  The City quotes from discovery responses provided by plaintiff, in which he states he was "outraged," "humiliated," and "embarrassed," and asserts that statements that plaintiff was "depressed," "hurt," or "humiliated" do not provide the required evidence of emotional distress, citing Nekolny v. Painter, 653 F.2d 1164, 1172

7

(7th Cir. 1981).  The City asserts that absent such proofs, plaintiff should be awarded nominal damages in the amount of $1.

Plaintiff agrees that he is not entitled to the remedies of economic and promotional relief, but states that he has demonstrated a genuine issue of material fact as to noneconomic damages under 42 U.S.C. § 1983 and ELCRA, and that the City has failed to establish a basis for dismissal of plaintiff's claim for adjustment of seniority dates under Fed. R. Civ. P. 56.

Plaintiff states his noneconomic damages include humiliation, increased stress, frustration, outrage, hopelessness, depression and emotional distress.  He points to his declaration, and the declarations of a friend-chiropractor and a co-worker, Sal Scafidi and Carl Holcomb, in support.  He points to the Sixth Circuit case of Middleton v. City of Flint, 92 F.3d 396 (6th Cir. 1996) in asserting that court has "recognized the severity of the injury occasioned by racial preferences."  He highlights Frantz' declaration for evidence of difficulty in sleeping, loss of appetite, weight loss, muscle tension and soreness, and lack of focus in studying for promotional exams, and that Frantz has undergone "hypnotherapy and chiropractic care," and has sought the advice of his church pastor.

Concerning the seniority issue, Frantz maintains that he is entitled to be bumped ahead of Martinez, and cites to Brunet v. City of Columbus, 1 F.3d 390 (6th Cir. 1993), a case in which the district court adjusted seniority dates of white male plaintiffs, to support his assertion that the court should adjust his seniority date to make him whole.

The City cites to several cases in support of its argument for dismissal.  One case it relies on is that of Price v. City of Charlotte, North Carolina, 93 F.3d 1241 (4th

8

Cir. 1996), a § 1983 case brought by nonminority police officers asserting that a race-based promotion policy violated the Equal Protection Clause of the Fourteenth Amendment.  The Fourth Circuit delved into the issue of non-economic damages at length and examined numerous cases in its reasoning.  Ultimately, the court reversed the compensatory non-economic damages awards made to seven nonminority police officers, specifically refraining from holding that "compensatory damages for emotional distress can never be awarded based exclusively on a plaintiff's testimony," but nevertheless finding that the plaintiffs in question in the case at bar had not sufficiently supported their claim for damages, but rather had given only "conclusory statements." Id. at 1256.

In opposition to these arguments, plaintiff cites to cases such as Bloch v. Ribar, 156 F.3d 673, 679 (6th Cir. 1998), and Memphis Community School Dist. v. Stachura, 477 U.S. 299, 307 (1986), for the proposition that compensatory damages under § 1983 can include compensation for mental distress.  This is not disputed by the City.  Plaintiff distinguishes cases relied on by the City, pointing out that several cases, including Price, were at the post-trial stage of proceedings, not subject to the same standard as the summary judgment examination employed by the courts.

The court agrees with plaintiff.  Although the declarations of Frantz and his friends leave doubtful the merits of his claim for non-economic damages, they will not be dismissed on a motion for summary judgment.  Plaintiff has provided the court with enough description and details of his injury for these requests as to both his federal and Michigan claims.

9

Finally, the City has requested summary judgment on the seniority adjustment requested by plaintiff, asserting that such an adjustment is inappropriate under International Brotherhood of Teamsters.  As that case stated, courts "must look to the practical realities and necessities inescapably involved in reconciling competing interests, in order to determine the special blend of what is necessary, what is fair, and what is workable."  Teamsters, 431 U.S. at 373.  The plaintiff in this case also objected to his retroactive seniority date in the court's companion Department of Justice matter, which this court overruled in entering the consent judgment agreed to by the parties. The court finds that the plaintiff has already received an equitable seniority adjustment. Changing that date again, merely to place plaintiff ahead of Mr. Martinez for certain speculative opportunities, would not only disrupt the expectations of an uninvolved third party, but does not guarantee an equitable result.  On balance, the court does not find that this requested adjustment is required or even especially helpful in reconciling the matter.  Judgment will enter for the City as to this claim for relief.

<u>CONCLUSION</u>

For the reasons given above, and as there stated, defendant City of Pontiac's motions for summary judgment are hereby GRANTED IN PART AND DENIED IN PART.  Counsel for all parties are directed to contact the deputy court clerk to schedule

10

remaining dates in the litigation.

IT IS SO ORDERED.

Dated:  January 9, 2007


s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 9, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

11